## WESTERN FEDERAL SAVINGS AND LOAN ASSOCIATION, Respondent,

v.

## COMMISSIONER OF INTERNAL REVENUE, Petitioner.

### No. 88–2001.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1989.

Decided July 27, 1989.

Bruce Ellisen, Washington, D.C., for petitioner.

Harlan Stamper, Kansas City, Mo., and Richard L. Bacon, Washington, D.C., for respondent.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The Commissioner of Internal Revenue appeals from a United States Tax Court decision determining that Western Federal Savings and Loan Association did not receive taxable income as a result of a stock dividend from the Federal Home Loan Bank of Des Moines (the "Des Moines district bank"). As a member savings institution, Western was obligated to maintain a certain capital stock ownership in the Des Moines district bank. On December 31, 1979, Western received from the district bank a stock dividend which it applied entirely to satisfy an increased level of required stock ownership. Other members, however, received a dividend which placed them in excess of the required stock ownership, allowing them to request the district bank to redeem excess shares in cash. Although the Des Moines district bank had never refused to grant a request for redemption, statutes gave it discretion as to

whether to honor such requests. The Commissioner argues on appeal that members could "elect" for purposes of 26 U.S.C. § 305(b)(1) to receive a dividend in either stock or cash, and that Western's dividend therefore should be taxable to it. We affirm the decision of the tax court.

Western is an Iowa savings and loan association and a member of the Federal Home Loan Bank of Des Moines, which operates under the supervision of the Federal Home Loan Bank Board and is one of eleven district banks established under the Federal Home Loan Bank Act of 1932. *See* 12 U.S.C. §§ 1421 to 1449 (1976 & Supp. III 1979). As is required of all member banks, Western must maintain capital stock ownership interest in the Des Moines district bank in an amount equal to at least one percent of the total outstanding balance of its home mortgage loans at the close of each calendar year, *see* 12 U.S.C. § 1426(c)(1), and at least five percent of the total outstanding borrowings from the Des Moines district bank. *See* 12 U.S.C. §§ 1426(c)(2), 1430(c).

Some member banks therefore are required at year-end to purchase additional stock in the district bank. They must do so by January 31 of the following year, and each share of stock is valued by statute at its $100 par value. 12 U.S.C. § 1426(b). Other members, those who own excess shares based on the appropriate calculations, may request that such shares be redeemed by the district bank. 12 U.S.C. § 1426(c)(1). Finally, as stockholders in district banks, members receive dividends declared by the district banks.[1] 12 U.S.C. § 1436; 12 C.F.R. § 522.6 (1979).

Before December 31, 1979, Western owned 1,852 shares of stock in the Des Moines district bank. On December 14, 1979, the district bank distributed 278,843 shares of stock to its 269 member banks; Western received a dividend of 172 shares and $51.50 in cash for fractional shares, bringing its total holdings to 2,024. As of December 31, 1979, Western's growing

amount of outstanding loans necessitated that it increase its holdings of district bank stock to 2,124 shares, and so on that day it purchased the required 100 additional shares.

Other members of the Des Moines district bank owned sufficient stock to fulfill ownership requirements, and in January of 1980 thirty-six members requested redemption of excess shares. The district bank honored all of these requests and redeemed excess shares at their $100 par value. Indeed, where a member bank met all relevant requirements, the Des Moines district bank never refused to redeem excess stock held by member banks. Without exception, the amount of stock redeemed by members of the Des Moines district banks was different from that which they received as a dividend on December 31, 1979. The stock dividend of December 31, 1979 was the first ever issued by the Des Moines district bank, and since then it has issued no others.

When Western filed its federal income tax return (Form 1120) for the taxable year ending September 30, 1980, it reported the stock dividend as "income on books not included in return." Rejecting Western's characterization, the Commissioner issued Western a notice of deficiency based on a determination that the stock dividend of $17,200 constituted taxable income.

Western challenged the deficiency in tax court. The Commissioner maintained that because some shareholders of the Des Moines district bank could elect to receive either stock, by accepting all proffered shares, or property, by redeeming excess shares for cash, and as the district bank had never refused a request for redemption, Western's stock dividend constituted income under section 305(b)(1). Western argued that because the district bank at all times retained discretion as to whether to redeem district bank shares, it enjoyed no such "election" and section 305(b)(1) was therefore inapplicable.

---

**1.** Instead of issuing stock certificates, the Des Moines district bank treated purchases of additional shares and redemptions of existing shares as accounting entries on its books and those of its member banks.

The tax court held in favor of Western, relying on its court-reviewed decision in *Frontier Savings Ass'n v. Commissioner*, 87 T.C. 665 (1986), *aff'd sub nom. Colonial Savings Ass'n and Subsidiaries v. Commissioner*, 854 F.2d 1001 (7th Cir.1988), and reasoning that nothing in the Federal Home Loan Bank Act suggests that since 1961 anyone other than the district banks and Federal Home Loan Bank Board has authority to determine whether excess shares shall be redeemed. With such discretion resting in the hands of the Des Moines district bank, Western could not be said to enjoy an election in choosing to accept dividends in the form of cash instead of stock.

The tax court also relied on the fact that the distribution at issue occurred on December 31, 1979, reasoning that Western could not compute the amount of shares which it was required to own under 12 U.S.C. § 1426(c) until some time in the following January. The court concluded that the member banks, including Western, did not have the option or election to have the Des Moines district bank redeem excess shares, and that therefore section 305(b)(1) was not applicable and the stock dividend was not taxable to Western. The Commissioner now appeals.[2]

The sole issue on appeal is whether the tax court erred in holding that Western did not possess an "election" under section 305(b)(1) to receive cash in lieu of stock dividends from the Des Moines district bank. Dividends in the form of stock generally are excluded from a taxpayer's gross income. *See* 26 U.S.C. § 305(a).[3] The ra-

tionale for this policy is revealed by legislative history:

> In its simplest form, a stock dividend is commonly thought of as a mere readjustment of its stockholder's interest, and not as income. For example, if a corporation with only common stock outstanding issues more common stock as a dividend, no basic change is made in the position of the corporation and its shareholders. No corporate assets are paid out, and the distribution merely gives each stockholder more pieces of paper to represent the same interest in the corporation.

S.Rep. No. 91–552, 91st Cong., 1st Sess. 150 (1969), U.S.Code Cong. & Admin.News 1969, pp. 1645, 2182. Section 305(b) provides, however, that a dividend is taxable where the taxpayer may elect to choose to receive it in the form of either stock or property (such as cash). The reason for this provision is that where such an election exists, "the stockholder who receives a stock dividend is in the same position as if he received a taxable cash dividend and purchased additional stock with the proceeds. His interest in the corporation is increased relative to the interests of stockholders who took dividends in cash." S.Rep. No. 91–552, 91st Cong., 1st Sess. 150 (1969), U.S.Code Cong. & Admin.News 1969, p. 2182.

The Commissioner argues that "as a practical matter" Western possessed an option to receive its dividend of December 31, 1979 in stock or cash, and that the dividend therefore constituted taxable income. The Commissioner does not dispute that the Des Moines district bank at all times re-

---

**2.** Western filed no brief on appeal, perhaps because its assessed deficiency totalled only $3,496. Instead, Western's interests have been asserted by amici curiae United States League of Savings Institutions, Missouri League of Savings Institutions, Iowa League of Savings Institutions, Farm & Home Savings Association, and Community Federal Savings & Loan Association.

**3.** 26 U.S.C. § 305 (1976 & Supp. III 1979) provides:

(a) *General rule.*—Except as otherwise provided in this section, gross income does not include the amount of any distribution of the

stock of a corporation made by such corporation to its shareholders with respect to its stock.

(b) *Exceptions.*—Subsection (a) shall not apply to distribution by a corporation of its stock, and the distribution shall be treated as a distribution of property to which section 301 applies—

(1) *Distributions in lieu of money.*—If the distribution is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either—

(A) in its stock, or

(B) in property.

tained complete discretion as to whether it would redeem shares tendered to it by member banks, but argues that the record conclusively demonstrates that the Des Moines district bank will never exercise that discretion. After considering the controlling statutes and the record before us, we reject the Commissioner's appeal.

We look first to the controlling statute. In 1961, Congress amended section 1426 to allow district banks to decide whether to redeem excess shares held by member institutions. During the period in which this dispute arose, as well as today, the statute provides:

> If the [district] bank finds that the investment of any member in stock is greater than that required under this subsection it *may*, unless prohibited by [the Federal Home Loan Bank Board] or by the provisions of paragraph (2) of this subsection, *in its discretion* and upon application of such member retire the stock of such member in excess of the amount so required.

12 U.S.C. § 1426(c), as amended by Pub. L.No. 87–210 (emphasis added). The significance of this statute is underscored by the text of its predecessor. Before 1961, 12 U.S.C. § 1426(c) (1958) provided:

> If the board finds that the investment of any member in stock is greater than that required under this section, upon application of such member, the bank *shall* pay such member for each share of stock in excess of the amount so required an amount equal to the value of such stock * * *.

(emphasis added). With regard to the evolution of this statute, the Seventh Circuit has stated:

> Although the legislative history is silent on why Congress made the change in 1961, we can only conclude that Congress made the change because it intended for the Federal Home Loan Banks to have flexibility in handling redemptions.

*Colonial Savings Ass'n and Subsidiaries v. Commissioner*, 854 F.2d 1001, 1012 (7th Cir.1988).

The Commissioner argues that the members of the Des Moines district bank, in-cluding Western, had an election within the meaning of section 305(b)(1) because the district bank "exercised its discretion not to exercise discretion." The Commissioner further argues that the tax court erred in holding that member banks could not know whether stock dividends would qualify as excess shares until January, because in this particular case Western had performed the relevant computations by December 31 and in fact purchased 100 additional shares on that date.

To the contrary, the record reveals that the Des Moines district bank expressly reserved its authority to refuse to grant a request for share redemption. On October 2, 1979, the president of the Des Moines district bank notified its member banks that the district bank intended to issue a capital stock dividend instead of a cash dividend for the year 1979. The notification bulletin to member banks stated:

> The Board of Directors of the Federal Home Loan Bank of Des Moines has decided that the dividend on capital stock for the year 1979 will be distributed in the form of additional capital stock rather than in cash as in past years.
>
> The Board of Directors felt it would be in the best interest of Eighth District members to have the dividend paid in the form of stock because of possible income tax advantage. Neither the Federal Home Loan Bank Board nor this Bank, however, can express an opinion as to the effect of this form of dividend. Each member should consult its own tax counsel as to the inclusion, or exclusion, of this distribution for tax purposes.
>
> The stock dividend will be credited to your capital stock account on December 31, 1979, with any fractional amount being credited as cash to your demand deposit account. *The stock you receive will, of course be subject to the usual requirements governing the ownership and redemption of capital stock by members.* The dividend rate will be announced at a later date and the actual amount of your dividend will be indicated at that time.

(emphasis added).

In providing that any dividends would be subject to the usual requirements govern-

ing the ownership and redemption of capital stock by members, the district bank doubtlessly alluded to its statutory discretion under 12 U.S.C. § 1426(c) to decline to honor requests for share redemption. In addition, the tax court found nothing in the minutes of the Des Moines district bank's board, in the district bank's bulletin, or in any other portion of the record which would suggest that the Des Moines district bank "necessarily would grant any and all requested redemptions." We will not overturn such a finding of fact unless clearly erroneous, see *F.P.P. Enters. v. United States*, 830 F.2d 114, 117 (8th Cir.1987); 26 U.S.C. § 7482(a)(1), and the Commissioner directs our attention to nothing in the record to convince us that this is the case.[4] We cannot say that the officers of the Des Moines district bank wholly disregarded their statutory obligations. *Cf. Colonial Savings*, 854 F.2d at 1013.

Moreover, the Commissioner in effect urges conflation of two distinct events. First, a taxpayer must await the district bank's decision as to whether to grant a dividend. Second, in order to compute its required stock holdings, a member bank must separately calculate its outstanding balance of home mortgage loans and the total borrowings it has from the district bank as of December 31 of the year. The tax court therefore concluded:

As a practical matter, the computation of the exact required balance cannot be completed until January of the following year. As a result, on the day of the distribution of the stock dividends, member banks could not know (other than through estimates or projections) whether they would be required to retain the stock dividends they received as part of their required investments in the District Bank or whether the stock dividends would qualify as excess shares. *See Frontier Savings Ass'n v. Commissioner*, [87 T.C. at 677].

The Commissioner disputes this finding, relying in large part upon the fact that in this case Western was able to determine on December 31, 1979, the number of shares that it was required to own because on that date it purchased from the Des Moines district bank an additional 100 needed shares. While this argument has some appeal, the tax court recognizes in the passage above that estimates or projections might enable a member bank to calculate the required purchases of additional stock. The Commissioner points to nothing in the record to indicate either the manner in which Western successfully accomplished its year-end calculation, or that other mem-

---

**4.** In arguing that the Des Moines district bank effectively abandoned its discretion to choose not to redeem excess shares, the Commissioner relies on the minutes of the December 14, 1979, meeting of the Board of Directors of the Des Moines district bank, which reflect the institution's policy with regard to share redemption:

The President advised that with the declaration of a stock dividend, and the larger than normal rate of dividend, some members might find that they hold more stock than is required by the Federal Home Loan Bank Act, and request the repurchase of excess stock. He pointed out that Section 6(c) of the Act permits the Bank to redeem stock within specified limitations.

The Board considered whether the Bank should in fact permit the sale of excess stock back to the Bank. After a full discussion, the Board determined that the Bank is adequately capitalized, and that there would be no purpose in keeping stock in excess of statutory requirements. The Board further found that authority should be delegated to the officers to repurchase excess stock providing the following criteria are met:

* The member makes a formal request to have the Bank repurchase excess stock.
* The officers are satisfied that there is stock in excess of the requirements set forth in Section 6(c) of the Act.
* The member has adequate collateral to cover outstanding advances, after deducting the repurchased stock.

On motion made, seconded, and unanimously carried, it was:

RESOLVED, That the officers are hereby authorized to repurchase excess stock held by members after determining that the above stated conditions have been complied with.

Although the Commissioner would have us read this resolution to establish that the Des Moines district bank would redeem excess shares in all circumstances where member banks complied with the stated criteria, we instead attribute to the declaration its plain meaning: that certain bank officers were authorized in their discretion to redeem excess shares but were not required to do so.

ber banks could in practice perform the required calculations on or before December 31 of each year. The Commissioner has not convinced us to conclude other than that the tax court's account of the evidence is plausible in light of the record viewed in its entirety. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Since Western's ability to request redemption of excess stock is not based simply upon the district bank's issuance of a stock dividend, but instead upon two unrelated transactions, the stock distribution itself was not "at the election of the shareholder, payable either in stock or in property." 26 U.S.C. § 305(b)(1).

Accordingly, we affirm the decision of the tax court.